UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCELINE E.,

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C25-5482-MLP

ORDER

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical opinion evidence, Plaintiff's testimony, lay witness testimony, and by failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. (Dkt. # 9.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 17.) Plaintiff filed a reply. (Dkt. # 18.) Having considered the ALJ's decision, the administrative record ("AR"), and the

ORDER - 1

parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.[1]

## II.    BACKGROUND

Plaintiff was born in 1978, has a college education, and has worked as a property manager and user support analyst. AR at 41, 42, 59. Plaintiff was last gainfully employed in January 2021. *Id.* at 28-29. In November 2022, Plaintiff applied for benefits, alleging disability as of March 15, 2020. AR at 26. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. After the ALJ conducted a hearing in June 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 26-44.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff's severe impairments include major depressive disorder; generalized anxiety disorder; PTSD; degenerative disc disease/arthritis of the spine; degenerative joint disease of the left knee; osteoarthritis of the right shoulder; fibromyalgia; dry eye syndrome; and obesity. AR at 29. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand/walk for 4 hours in an 8-hour workday; can use a cane for ambulation and carry objects in her free hand; frequently handle, finger, and overhead reach with the right upper extremity; never climb ladders, ropes, and scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; never work at unprotected heights or with exposed moving mechanical parts; and avoid concentrated exposure to extreme cold, heat, and vibration. AR at 32-33.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. § 416.920.

ORDER - 2

As for non-exertional impairments, the ALJ found Plaintiff can understand, follow, and carry out simple, as well as detailed but not complex, instructions; perform routine and repetitive tasks; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas, but can meet general production demands; can use judgment to make simple work-related decisions; can interact with supervisors appropriately to receive instruction and redirection; can have interactions with co-workers that do not involve persuading, negotiating, or instructing; occasional interaction with the public that does not involve persuading, negotiating, or instructing; and is capable of work in a stable work environment where work place and work processes remain generally the same at least two-thirds of the time. AR at 33.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th

ORDER - 3

Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.    DISCUSSION

### A.    The ALJ Erred in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In October 2022, Terilee Wingate, Ph.D., completed a psychological evaluation and diagnosed Plaintiff with PTSD, chronic; major depressive disorder, recurrent, severe; and generalized anxiety disorder with panic. AR at 384. Dr. Wingate opined that Plaintiff was markedly limited in her abilities to maintain appropriate behavior in a work setting and to complete a normal workday and work week without interruptions from psychologically based symptoms. *Id*. She opined moderate limitations in several other work-related functions. *Id.*

The ALJ found Dr. Wingate's opinion less persuasive than the other opinions in the record because Dr. Wingate did not explain her marked limitations and these limitations were inconsistent with Plaintiff's level of mental health treatment and her work history. AR at 41.

### 1.    *Supportability*

The ALJ found that Dr. Wingate did not provide an explanation for the marked limitations, which is a supportability finding. *Woods,* 32 F.4th at 791-92 (supportability means the extent to which a medical source supports their opinion by explaining the relevant evidence). Plaintiff argues that Dr. Wingate's report includes a thorough summary of her findings gleaned from examination and testing. (Dkt. # 9 at 4).

An ALJ may consider the quality of an explanation when determining how much weight to give a medical opinion, *Ford,* 950 F.3d at 1155, and need not accept an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). But an ALJ may not reject a physician's opinion as unsupported while ignoring or unreasonably interpreting the physician's findings. *See Garrison v. Colvin,* 759 F.3d 995, 1012-13 (9th Cir. 2014). In making her supportability finding, the ALJ failed to acknowledge that Dr. Wingate's opinion includes a clinical interview, clinical findings regarding Plaintiff's symptoms, a mental status examination and results from the Beck Anxiety Inventory. *See* AR at 382-87. That Dr. Wingate did not write the specific bases for each limitation next to that limitation is not a rational reason to reject the opinion. *Adria H. v. Comm'r of Soc. Sec.,* 2022 WL 73870, at *4 (W.D. Wash. Jan. 7, 2022). Thus, the ALJ's supportability finding is not supported by substantial evidence.

### 2.    *Consistency*

The ALJ found that a marked limitation in the ability to maintain appropriate behavior in a work setting was inconsistent with Plaintiff's denial of a history of interpersonal problems in the workplace. AR at 41. The ALJ cited Plaintiff's function report, where she stated that she got

ORDER - 5

along with authority figures and had never been fired for an inability to get along with others. *Id.* (citing *id.* at 279-80).

The ALJ does not explain, and the Court cannot discern, how Plaintiff's history of getting along with supervisors and coworkers inherently contradicts a marked limitation in maintaining appropriate behavior. While interpersonal interactions may be a component of appropriate work behavior, the ability to get along with others does not negate other aspects of Plaintiff's condition that impact her behavior. For instance, Dr. Wingate found that Plaintiff's insight and judgment were not within normal limits – when asked what she would do in the event of a broken pipe flooding the kitchen, Plaintiff stated she would break down and cry, then call someone and ask what to do. AR at 386. And, as noted by Plaintiff, she now becomes anxious around people and will "flee the situation" when anxious. (Dkt. # 9 at 4 (citing AR at 383).) Such reactions cannot reasonably be classified as behavior that would be appropriate in the workplace. Without further explanation, Plaintiff's historic ability to get along with others is not an adequate reason to reject a limitation in maintaining appropriate behavior in the workplace.

The ALJ also found that Plaintiff's level of mental health treatment, which "consisted only in prescriptions for psychotropic medication from her primary care provider and weekly-fortnightly therapy session commencing only in February 2024," was inconsistent with a marked limitation in completing a normal workday and work week without interruption from psychologically based symptoms. AR at 41. To the extent the ALJ implies that Plaintiff's ability to attend therapy appointments every one to two weeks indicates an ability to complete a normal workday and work week, the Court rejects this reasoning. Whether Plaintiff can handle occasional medical appointments has little bearing on whether she could maintain a regular work schedule of eight hours per day, five days per week. *See, e.g., Leila K. v. Comm'r of Soc. Sec.,*

ORDER - 6

2021 WL 5564424, at *5 (W.D. Wash. Nov. 29, 2021) (citing *Mulanax v. Comm'r of Soc. Sec. Admin.,* 293 F. App'x 522, 523 (9th Cir. 2008)).

Insofar as the ALJ implies that Plaintiff's treatment is conservative or that she has failed to seek treatment, this line of reasoning also fails. The Ninth Circuit has often criticized the use of a lack of treatment to reject mental complaints as "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r Soc. Sec. Admin.,* 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotation marks omitted). Even where lack of treatment is an appropriate factor to consider, the ALJ may not do so without considering any explanations the claimant may provide, or other information in the case record that may explain a failure to seek further treatment. Here, the ALJ never inquired about Plaintiff's mental health treatment.

The Ninth Circuit has also recognized that within the context of mental health conditions, the prescription of psychiatric medications is not indicative of conservative treatment. *Drawn v. Berryhill,* 728 F. App'x 637, 642 (9th Cir. 2018) (holding the ALJ erred in finding claimant's treatment to be conservative "given she was prescribed a number of psychiatric medications."). The record indicates Plaintiff has been prescribed several medications including diazepam, fluoxetine, Xanax, mirtazapine, hydroxyzine, and duloxetine. AR at 438, 495, 771, 886, 942. And medication management by a primary care provider, as opposed to a mental health specialist, still constitutes formal mental health treatment, and is not a proper basis to discredit a doctor's opinion of limitations. *Breanne L. F. v. Comm'r of Soc. Sec.,* 2024 WL 3289606, at *16 (W.D. Wash. July 3, 2024); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

The ALJ provided no valid reason supported by substantial evidence to discount Dr. Wingate's opinion. The Court concludes the ALJ erred in finding it unpersuasive.

**B.**     **The ALJ Erred in Evaluating Plaintiff's Testimony**

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified that her issues with cramping, weakness, pain, shakiness, and vertigo have prevented her from working. AR at 63-64. On a typical day, she wakes up, takes her medication, then sits on the couch for up to an hour to get her bearings because "everything in [her] body is just trembling." *Id.* at 66. Plaintiff described getting bad hot flashes in the morning that feels like someone is injecting her with boiling water. *Id.* She stated that for the most part, she sits on the couch and watches TV or cries. *Id.* On good days where her pain isn't as bad, she tries to make a lot of food so she can reheat it, but her roommate cooks for her most of the time. *Id.* at 66-67. She can perform minimal household chores, such as loading dirty dishes in the dishwasher, but her roommate helps with other chores. *Id.* at 69-70. She stated that even when she can cook or do chores, it takes her longer, but she keeps pushing because her doctor said to keep her muscles moving as much as possible. *Id.* at 70.

Plaintiff testified that her pain is constantly at a four out of ten, and that any movement at all will increase her pain to a six or seven or higher. AR at 75. She stated that she has difficulty walking due to pain and can typically walk for 15-20 minutes before needing to sit down. *Id.* On bad days, she can only walk for five minutes. *Id.* She stated that she has to get up and change position about every 30 minutes due to her pain. *Id.* at 76.

Plaintiff also testified that her mental health issues have interfered with her ability to work. AR at 72. She has recurrent nightmares about a previous trauma where she was held hostage. *Id.* She stated that she constantly feels terrified and gets paranoid that someone is following her. *Id.* at 73. She experiences panic attacks and has become afraid of people. *Id.* at 73-74. Plaintiff stated that she mostly stays home because she is "scared to do anything or go anywhere." *Id.* at 75. She will go weeks without leaving her house, and usually only leaves if she has an appointment. *Id.* at 78. Plaintiff testified that she also experiences depression every day, which is exacerbated by her constant pain. *Id.* at 77. She stated that when in a depressed state, she just sits around and often cries. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR at 39.

### 1.    *Objective Medical Evidence*

Plaintiff argues that the ALJ applied an incorrect legal standard requiring objective evidence to fully corroborate the degree of symptoms alleged, and that the ALJ's conclusions are based on a cherry-picked record. (Dkt. # 9 at 8.) While an ALJ may not reject testimony based solely on a lack of medical evidence to fully corroborate the alleged severity of symptoms alleged, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt,* 53 F.4th at 498. The ALJ found that Plaintiff's reports of severe pain were inconsistent with her demeanor at appointments, which "was typically no acute distress, not ill-appearing, and often pleasant." AR at 39.

ORDER - 9

District courts in this circuit, including this Court, have questioned the applicability of notes of "no acute distress" to chronic conditions. *See, e.g.*, *Troy A. H. v. Comm'r of Soc. Sec.*, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("it is questionable whether a chart note of "no acute distress" is relevant to allegations of chronic symptoms."); *Richard F. v. Comm'r of Soc. Sec.*, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.'") (internal citation omitted). The record shows Plaintiff's impairments are chronic. The fact that she is not in acute distress is not inconsistent with her allegations of chronic pain. *Heather H. v. Comm'r of Soc. Sec.*, 2025 WL 2437735, at *6 (W.D. Wash. Aug. 25, 2025) ("While 'no acute distress' is not defined, it clearly does not indicate Plaintiff is not in pain."). And, contrary to the ALJ's assertion that her demeanor is often noted as pleasant, Plaintiff is often observed to be nervous, anxious, or dysphoric at appointments. *See, e.g.*, AR at 414-15, 487, 497, 508, 518, 714, 729, 768, 869. The ALJ failed to acknowledge such findings or explain why they were less persuasive than occasional observations of pleasant demeanor.

The ALJ also found Plaintiff's testimony inconsistent with frequently normal physical examinations. AR at 39 (citing *id.* at 467-70, 485-90, 504-10, 544-50, 599-603, 608-10). However, the ALJ found fibromyalgia was a severe impairment. *Id.* at 29. Fibromyalgia is characterized by normal "muscle strength, sensory functions, and reflexes," and "an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Revels v. Berryhill,* 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Rollins v. Massanari,* 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting)). Thus, the lack of abnormal objective findings on examination was not a sufficient basis to discount Plaintiff's symptom testimony, where fibromyalgia was a severe impairment. *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004)

(finding the ALJ erred by "effectively requiring objective evidence for a disease that eludes such measurement.") (cleaned up).

> ### 2.    *Activities of Daily Living*

The ALJ referenced the testimony of Plaintiff's friend, Verquella Cuebas, and noted that Plaintiff could complete most activities of daily living such as preparation of simple meals, driving, and short walks. AR at 40. Plaintiff argues that the evidence reveals she needs assistance to complete such activities and that the ALJ failed to explain how her activities contradicted her testimony. (Dkt. # 9 at 8.)

Engaging in daily activities that are incompatible with the severity of symptoms alleged can undermine a claimant's subjective symptom testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014). While contradiction between activities and testimony is a reasonable basis to reject the testimony, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (citations omitted). The record indicates that Plaintiff mostly prepares frozen meals or has her friend help her cook. AR at 276. She can do some light chores, but she does very little at a time, and has a friend come over multiple times per week to help with deeper cleaning. *Id.* at 276, 300. While she can drive, she only leaves her house for medical appointments and does most of her shopping online. *Id.* at 277, 299. None of these activities contradict Plaintiff's testimony, in which she indicated she struggled with these activities, not that she was incapable of them. *Id.* at 63-79.

ORDER - 11

3.       *Subjective Complaints and Psychogenic Pain*

The ALJ stated that Plaintiff's complaints are often subjective and not objectively observed, first citing therapy visits where Plaintiff reported feeling disorganized, but her provider found her thought process coherent. AR at 39 (citing *id.* at 1007, 1010, 1013, 1016). The ALJ ignores significant abnormal findings. In every visit note cited by the ALJ, Plaintiff had an anxious and tearful affect and a depressed and moderately anxious mood. *Id.* at 1007, 1010, 1013, 1016. Plaintiff also frequently reported significant insomnia and loss of appetite. *Id*. At one visit, she reported experiencing overwhelming and unwanted thoughts and exhibited extreme hypervigilance. *Id.* at 1016-17. These are objective observations of Plaintiff's mental health that are consistent with her testimony. *See Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (characterizing mental status evaluations as objective evidence). The ALJ's focus on coherent thought process to the exclusion of other abnormal findings in the therapy notes is an erroneous selective focus on evidence. *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ cannot "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

The ALJ also found the record suggested a "significant psychogenic element" to Plaintiff's pain complaints, noting that Plaintiff reported no diminishment in pain even when given an anesthetic in connection with an epidural injection procedure. AR at 39 (citing *id.* at 813). Plaintiff argues that psychogenic pain is not a rational credibility factor. (Dkt. # 9 at 10.) The Court agrees. A claimant can still be disabled even if their pain stems entirely from psychological causes. *Kelly v. Berryhill,* 732 F. App'x 558, 561 n.2 (9th Cir. 2018) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.07) (recognizing somatic symptom disorders as a basis for disability); *see also McCollough v. Astrue,* 247 F. App'x 925, 926 (9th Cir. 2007)

ORDER - 12

(citing *Carradine v. Barnhart,* 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits.")).

Further, the ALJ has both misstated the record and improperly acted as a medical expert in reaching this conclusion. The cited record states that Plaintiff "reported minimal improvement in symptoms during the immediate anesthetic phase with no sustained relief from the injection." AR at 813. Minimal improvement is not the same as "no diminishment in pain." Even if it were, the ALJ was not qualified to conclude that such a result suggested "a significant psychogenic element" to Plaintiff's pain, or to conclude that such pain was not real. *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is not qualified as a medical expert).

### 4.    *Limited Mental Health Treatment*

The ALJ also found that Plaintiff's allegations of significant emotional and mental health distress were undermined by her limited psychological treatment. AR at 39. Specifically, the ALJ noted that Plaintiff had not been hospitalized or sought crisis care, and that until February 2024, her psychological treatment was limited to medications prescribed by her primary care provider. *Id.* Plaintiff argues that the ALJ unreasonably assumes that her mental health impairments can be disabling only in the context of hospitalization and that the ALJ's "blame the victim" mentality is poor jurisprudence. (Dkt. # 9 at 11.)

A claimant may suffer from mental health impairments that prevent her from working but do not require psychiatric hospitalization. *Schiaffino v. Saul,* 799 F. App'x 473, 476 (9th Cir. 2020) ("Hospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment."). And medication management by a primary care provider, as opposed to a mental health specialist, still constitutes formal mental health treatment, and is not a proper basis to discredit a claimant's complaints. *Breanne L. F. v.*

ORDER - 13

*Comm'r of Soc. Sec.,* 2024 WL 3289606, at *16 (W.D. Wash. July 3, 2024); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Because the ALJ provided no reason supported by substantial evidence, she erred in discounting Plaintiff's testimony. Such error was harmful as Plaintiff testified to greater restrictions than the ALJ incorporated into the RFC.

**C.      Lay Witness Testimony**

In December 2022, Plaintiff's friend, Ms. Cuebas, submitted a function report. AR at 297-306. The ALJ summarized Ms. Cuebas' report but did not state whether she was crediting or discounting this evidence. *Id.* at 34. Plaintiff argues that the ALJ was required to either include the limitations identified by Ms. Cuebas or provide germane reasons for excluding them. (Dkt. # 9 at 12.) The Commissioner argues that ALJs are not required to articulate how they considered lay witness evidence under the current regulations, and in any case, the ALJ's reasons for rejecting Plaintiff's testimony apply equally to her friend's statements. (Dkt. # 17 at 12-13.) As discussed above, however, the ALJ did not supply valid reasons supported by substantial evidence to reject Plaintiff's testimony. Because remand is warranted due to errors in evaluating the medical evidence and Plaintiff's testimony, the ALJ must also reconsider the lay witness statement in light of the full record.

**D.      Vocational Evidence**

Plaintiff contends that the jobs identified by the Vocational Expert at the hearing conflict with the production and pace limitations in the RFC, and that the ALJ failed to explain or resolve this inconsistency. (Dkt. # 9 at 13-14.) Given that the Court has concluded that the ALJ harmfully erred in her evaluation of the medical and testimonial evidence, the ALJ's findings at steps four and five must be reconsidered in light of the proceedings on remand.

ORDER - 14

E.    **Scope of Remand**

Plaintiff requests the Court credit Dr. Wingate's opinion and the testimonial evidence as true and remand for an award of benefits. (Dkt. # 9 at 15-16.)

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill,* 880 F.3d 1041, 1044 (9th Cir. 2017). To determine whether such an award is appropriate, the Court applies a three-step framework. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison,* 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler,* 775 F.3d at 1101 (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison,* 759 F.3d at 1020. Even if the Court concludes all three steps are satisfied, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon,* 880 F.3d at 1045 (citing *Treichler,* 775 F.3d at 1101).

Here, outstanding issues remain for the ALJ to resolve. Even if this Court credited Plaintiff's testimony and the lay witness statement as true, an ALJ needs to interpret her alleged limitations into an RFC. *Rounds v. Comm'r of Soc. Sec. Admin.,* 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Dr. Wingate's opinion is contradicted by State agency doctors' opinions, a

ORDER - 15

conflict that the ALJ must address in the first instance. Because unresolved conflicts remain in the record, remand for further proceedings is appropriate.

**V.      CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

 On remand, the ALJ should reevaluate the opinion of Dr. Wingate, Plaintiff's testimony, and the lay witness testimony; reassess the RFC as appropriate; and proceed to steps four and five as necessary.

Dated this 4th day of February, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 16